Thank you. You may proceed. Good morning, Your Honors. Robert Marshall on behalf of the appellants, which I'd like to collectively refer to as Mitsui. I'm afraid this case doesn't involve Groucho Marx or the Three Stooges or anything fun like that, just insurance policies, which are unfortunately a drier subject, pun intended. Your Honors, this case a clear example of how insurers should not act. Well, let me ask you this just to make sure I understand. Do you agree that if we hold Tokio's policy as an excess policy, then your equitable contribution claims fail? I would agree. Okay. I just want to make sure that that, okay, go ahead. Early in the defense of this underlying case, when Counsel for Kyocera America, that's Mitsui's name insured, was attempting to obtain additional insured coverage from the parent corporation, Kyocera Japan, which was Tokio Marine's insured, he was referred to a person at Tokio Marine Claim Services. This is in the record at page 851. Tokio Marine then ignored or deflected repeated tenders and requests for defense and indemnity made by its additional insured for more than two years. This litany of misdirection by Tokio Marine is reflected in the many items of correspondence found in the record on page 851 through 893. Tokio Marine refused to respond to the tenders, misrepresented the facts, deflected multiple requests for some kind of answer, asked on its behalf that mediation be rescheduled, then after 5 p.m. the night before of the rescheduled mediation, informed by email it would not attend. Importantly... Counsel? Yes. Judge Rollins, do all these facts go to your bad faith claim? It goes to two things. It goes to the bad faith claim, which we believe should be preserved because we appealed the dismissal of the first amendment complaint, but it also goes to the meaning of endorsement number eight, which I think will become apparent as I go through my argument. Well, can I ask you about the bad faith claim? If we agree that the forum selection clause is enforceable, doesn't the bad faith claim go away? The bad faith claim would disappear if the forum selection clause was enforced because we can't bring a bad faith claim in Japan. Okay. So it's important that Kyocera American itself was involved. That's found in a letter from Tokio Marine at record page 154, where the author states that Tokio Marine was in communication with Kyocera Japan's legal department who evaluated the tender. At no time did Tokio Marine or Kyocera Japan identify or indicate that there was some underlying primary policy at issue other than the Tokio Marine policy, nor did they say a retained limit was at issue, and they didn't say that there was some issue with maintenance of underlying insurance. Okay, so the one policy is for you contending anyway, you know, just in terms of insurance coverage, sometimes if primary is cost more per amount, and then the excess coverage, you know, you get an umbrella and you don't pay as much for that. And if I look at one policy, it says it costs $58,000 a year, then there was also a policy that I think was determined excess to that $78,000 a year premium, and then the Tokio one was $473,000? Right. But did that interview, the $473,000, it was for $38 million, right? Right. But was it for more people too, or are you contending in any way the amount of the premiums in any way indicates whether something was primary or excess? I don't think it's central to the argument because it gets very complex when you get into underwriting because, yeah, there are more corporations involved, but it's a more specific policy. It's a products liability policy. Okay, so that isn't really something you're arguing here. It's not important. Okay. What's important is that the Tokio marine policy must be read in its entirety. It's found at record pages 725 through 743. The declarations page does not indicate that the Tokio marine policy is excess. The title of the policy does not do so. But you've got the problem of endorsement 8. It clearly says that, included within the products, to which this insurance applies in excess of the total sum of the applicable limits of insurance for each occurrence of the underlying insurance. What are you going to do with that? Well, what we're going to do with that and why this information is important is that the case law as applied would favor Mitsui's argument because, in addition to the things I said before, the limits of insurance language reads like a primary policy without mention of being excess to ultimate net loss or anything else. In fact, the notice condition requires notice of any claim immediately upon receipt, not any claim that may involve an excess policy. It's explicitly written as a primary policy. At the 11th hour, Tokio marine cites to this endorsement. It's found at record pages 740 through 743. It is written only when the scheduled underlying insurance exists. No scheduled underlying insurance existed at the time of this claim. This is claims made coverage. It's the same as if that schedule was blank. So endorsement number eight would bar the obtaining of insurance afterward. Wouldn't the same provision apply? It would, but no insurance was obtained afterwards. Are they simultaneous? I mean, there are two policies here. Well, number one, that primary policy was never mentioned by anybody. It was never produced by Kayashiro Japan or Tokio marine. It's claims made coverage. It was in effect for only two months, the first two months of the Tokio marine policy, but the claim came in six months later. So this policy didn't even exist for all practical purposes at the time of the claim. Again, it would be as if that schedule was blank. Anyway. Well, we have to look at California law, right, on this. I'm curious what your argument would be on, if we're analyzing whether Tokio's policy is primary and not an excess policy, we have to look at Carmel Development Company versus RLI. And what's your best authority distinguishing that? RLI itself. The court really misinterpreted RLI. In RLI, the policy which the court found to be excess, it was clear, not only in the insuring agreement, but in the limits of insurance section, that the policy would only respond in excess of ultimate net loss, which was defined as being excess of both the applicable scheduled underlying insurance and all other available coverage, whether primary or excess. That is nothing like endorsement number eight, which just says it's excess of the scheduled underlying insurance. We know that doesn't work here because there was none in effect. And it says or, and this is three paragraphs later, or if there is no coverage for a particular occurrence under the scheduled underlying insurance, or excess of a retained limit of zero, or simply other insurance. Well, that scheduled underlying insurance, again, was completely absent. This isn't a question about whether the scheduled underlying insurance had an exclusion, or a condition was violated, or the limits were exhausted. It simply didn't exist. And in RLI, it's important that the policy under the excess policy, the court said, had failed to clearly and unequivocally inform the insured that it was excess over all other insurance, primary and excess. This is not the case here. Endorsement number eight doesn't clearly and unequivocally inform the insured that the Tokyo Marine policy was excess over all other insurance, whether primary or excess. It just states that the policy's excess of scheduled underlying insurance, not both scheduled underlying insurance and any other insurance, whether primary or excess. All it does is make the Tokyo Marine policy, if it applies at all, because this is a very strange endorsement written in Malaysian currency for no apparent reason. We don't know whether this was simply written because there was an overlap with coverage for some particular Malaysian risk, and so they added this endorsement to the policy. We don't know what this policy is. It was never produced. The most the endorsement would do is make the policy excess of collectible other insurance. This is no different than the other insurance clauses of the Mitsui policy. The notion that simple and undefined other insurance language that is found after an insuring clause trumps other insurance language found later in a policy is unsupported by the basic law of contracts. There is no rationale for prioritizing one clause over another by virtue of what order they are found in the contracts. And no case law cited by either the parties or the district court is on point to the facts of this case because of how strange this endorsement is. So no case holds that we can prioritize Tokyo Marine's other insurance clause over Mitsui's. Additionally, this case never should have been limited to an equitable contribution claim in the first instance. Because of Tokyo Marine's conduct, application of the Forum Selection Clause violates important and well-entrenched California public policy. Moreover, neither Mitsui... I have trouble with that argument, counsel, because it seems to me that we have two Japanese companies who signed this contract in Japan and are agreeing in the Forum Selection Clause to have the dispute resolved in Japan under Japanese law. What's wrong with that? Nothing wrong with that. But this is not a dispute between that company in Japan and that insurer in Japan. This is a dispute between an American corporation and an insurer located in Japan. That American corporation was not a party to that insurance policy. So the Forum Selection Clause should not be enforced against it. This American corporation was an insured by virtue of an endorsement added to the policy that covered all vendors of Kyocera Japan. That is a very typical endorsement found in primary policies. Just to be sure, which is the American corporation? It would be Kyocera Document Solutions America, KDA referred to in the... But Mitsui is not an American corporation. They are. Both insurers are. Who do you represent? Mitsui. Okay. So the Forum Selection Clause should not have been enforced in the first instance. We need to preserve the strong public policy. We're not a party to this contract. So our first amendment complaint should be allowed to proceed. The district court's dismissal should be reversed and our claims be reinstated. Well, is the strong public policy the same when two insurance companies are fighting, two Japanese insurance companies? It is because... It's not like some poor little person that has nothing to do with anything that isn't... Well... I mean, this is an insurance company claiming bad faith against another insurance company, right? I understand, but by way of subrogation. And it's important because California... Well, but public policy sort of looks to the uneven bargaining of people and the, you know... But there's another principle in California bad faith law reflected in the case law. And that is when two insurers are at issue and one acts responsibly and the other does not, the court says we do not want to reward the recalcitrant insurer by forcing the good insurer to pay the whole claim. And that is part and parcel of the bad faith law of California. So the public policy is implicated. Counselor, KDA is not a party to this litigation, is it? Not a party to this coverage litigation. So I'm not quite sure how you can invoke KDA's standing in the Forum Selection Clause issue. We brought our claim as a subrogee of KDA in the first amendment complaint, the complaint that was dismissed. So you're arguing you stand in the shoes of KDA for that purpose? Correct, Your Honor. And you paid a million dollars, right? We paid a total of over $3 million. Well, $2.7 million was, but wasn't there kind of an excess carrier to Mitsui? It's our position that the Mitsui entire line of coverage is primary, and this is why. The Mitsui policy that was next in line is very clear and says that when the Mitsui primary policy limits are exhausted, this coverage continues in force in the same manner. Okay, so there was $1 million, and then someone paid $1.7. $1.7. Who paid $1.7? The next policy. And what's their name? It's either Mitsui Sumitomo Insurance Company of America or Mitsui Sumitomo Insurance USA, Inc. I can't remember which is which. And what's the one that paid $1 million? That's the primary policy. And what's that called? Again, I can go back in the record and find it. So you're saying they're all Mitsui? They're all Mitsui. And what I'm really saying is that that excess policy said we just continue in force just like that first policy. Okay, so there was a $1 million policy, then a $25 million policy, and then a $38 million policy, this one in question. Is that right? And a $38 million was Tokyo Marine. Right. Right. Okay. And they're both first-dollar ground-up coverage. If this case had involved – It has to be for you to prevail for equitable contribution. Yeah. Otherwise, if it's an excess carrier, then that excess coverage, then that doesn't work, right? That's correct. But nothing else makes sense. I mean, if Kyocera America had been sued, this Tokyo Marine policy would respond as a primary policy. There was no scheduled underlying insurance, in fact. The retained limit was nil, and other insurance wouldn't be involved. It operates like a primary policy. Thank you, counsel. We understand your argument. Your time for your side has expired. Thank you. Thank you, Your Honor. Counsel for the Tokyo? Good morning, Your Honors. May it please the Court, Daniel London. Morning. From London Fisher LLP for the Apelli Tokyo Marine and Nishido Fire Insurance Company of Japan. Your Honors, it's our position that the District Court correctly looked to the insuring clause of the various policies in order to determine the level of policy obligation adopted by the insurers and understand that before moving on to the insurance conditions of the policies. This is required under California law, not only under the Olympic case, which is a California Court of Appeals case, 126-CALAP-3-593, but under the more recent Carmel case, 126-CALAP-4-502. As the Court said in Carmel, looking to the other insurance condition of a policy before determining the level of policy obligation by reference to the insuring clause of a policy would entail, quote, reading the policy backwards. And that's what the appellants have asked us to do here, and that's what the District Court refused to do. Therefore, dismissal of Mitsui's equitable contribution claim was entirely correct because an excess insurer owes no duty of contribution to a primary insurer. We had a chart in our reply briefs underlying this appeal. It appears at ER 72 of the record, and I think it's helpful in showing in a graphic manner the way in which this insurance program was designed to work. In short, and this is also reflected in the Tanaka Declaration, Tokyo Marine issued a policy to the Japanese parent company, Kyocera, which policy was designed to provide coverage in the event that any subsidiary failed to provide coverage for itself or failed to procure the correct coverage for itself. The policy was by design an excess or an umbrella policy. By contrast, each of the subsidiaries of Kyocera, of which there are many, more than a dozen listed just in the identified additional insurance section of the Tokyo Marine policy, each of those subsidiaries was required and expected to purchase their own insurance to insure against their own risks. Kyocera Documents America did that by purchasing the Mitsui policies. And the design of this program was so that the Mitsui policies would respond to the risks and the Tokyo Marine policy would be available in the event that there was some lack of coverage or some very large claim that exhausted the coverage. That's perfectly reasonable and makes perfect sense. Indeed, it would be absurd for KDA to have spent its own money purchasing insurance from Mitsui if it was able to get identical coverage from its parent corporation without paying for it. With respect to the- Counsel, would you help us out with endorsement number eight? That's the least, as I look at it, one of the key issues in this case. And you've heard counsel's interpretation of it. I'd like to hear yours. Sure. So endorsement number eight takes a standard form commercial general liability insurance policy and modifies it so that it will achieve the purposes that the insured and the insurer sought to achieve here. If we flip to endorsement number eight, which appears at ER 201 of the record, we see that it says if damages from a particular occurrence is not covered by the, quote, scheduled insurance, and that scheduled insurance is described later in the endorsement at ER 204- Stop there for a moment. You heard counsel say there was no scheduled insurance. Well, the scheduled insurance is identified in the policy as a- In other words, you dispute what your opposing counsel is saying? The scheduled insurance is identified in the policy as a policy of insurance that was written to provide coverage during the period October 30, 2009 to October 30, 2010. That policy of insurance was in effect with respect to certain Malaysian risks for Kyocera, which is an international company. That policy of insurance does not apply in this instance. I don't think you answered my question. You dispute what your opposing counsel has told us in open court. The scheduled insurance would not have applied in any event to the- The question was, was there scheduled insurance? And if so, what was it? Yes, Your Honor, the scheduled insurance is identified at ER 204 of the policy. And it was in effect at the time? It was not in effect at the time. According to the- Does that make a difference? It doesn't, Your Honor, because we have a provision which provides, if damage from a particular currency is not covered by the scheduled insurance, we will pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury or property damage included within the product's liability, or rather product's completed operations hazard, to which this insurance implies in excess of the greater of the retained limit, which is zero in this case, or the sum of an amount collectible by other insurance and the amount of any deductible and self-insured amount of insurance. So conceding that the scheduled insurance does not apply because it was not in effect, we then move on to the second step, which is to determine whether the loss is in excess of the larger of the retained limit, zero, or the sum of the amount collectible by other insurance. In this instance, the other insurance is the Mitsui policies. The other and the scheduled are not the same thing in your argument? Correct. And they are defined in the policy to be different things. Furthermore, this policy does contain its own other insurance condition at ER 189, and so in order to adopt Mitsui's argument, we would not only have to ignore the express language of Endorsement 8, but we would have to read the other insurance condition at ER 189 of the policy out of the policy entirely. We would have to determine that the modification to the insuring clause and the other insurance condition are surplusage, and under basic principles of contract law, we normally would not do so. Let me ask you about the Japan does not appear to recognize bad faith, and accordingly the effect of enforcing the forum selection clause is that Mitsui would not be able to bring its subrogated bad faith claim against Tokyo. Is that correct? Your Honor, actually the district court found that Japan does recognize or at least found that Mitsui's expert had, the expert affidavit had indicated that Japan does recognize, quote, good faith. In the event that they recognize good faith, presumably they recognize the converse. I'm asking you about the law. Does Japan recognize bad faith? Your Honor, I don't know whether under Japanese law there could be a cause of action for bad faith. It's not relevant, frankly, to the enforcement of the forum selection clause. Those are in international agreement. The fact that the causes of action recognized in a foreign country are not identical to the causes of action recognized in the United States is not dispositive of the question. Well, how do you distinguish DOE 1 versus AOL in which we invalidate a forum selection clause? Your Honor, DOE 1 has not been, was not a case that was raised in any of the underlying briefings as far as I'm aware. But does that matter if it's raised or not, if it's a question that we have about a case that may apply? It certainly does not, Your Honor. I think you should respond to the question, in other words. Yes. So I can't distinguish DOE 1 because I'm not familiar with it. However, I will say that under Bremen, which is a U.S. Supreme Court case, we are required to allow the enforcement of international, of forum selection clauses in international agreements. And in fact, there are several cases, including Lockton, which have found that Tokyo Marine is, rather Japan is an adequate alternative forum for litigation where required by agreement. Well, counsel, you heard again the colloquy with your opposing counsel. And they stand in the shoes, he says, of Kyocera America as sub-regi and therefore Kyocera's interests have to be taken into account in terms of how we approach the forum selection clause. What's your response? Well, my response to that is that Kyocera is an additional insured under the Tokyo Marine agreement. They're not a stranger to this contract. And therefore, under Bremen or under this court's decision in Minetti-Faro, they would be required to, because they're part of the same transaction, participate in the forum selection clause. Although we've not appealed from the district court's decision with respect to the forum selection clause, we would argue that because none of these claims would exist but for the Tokyo Marine policy, and none of these claims can be proved but for an interpretation of the Tokyo Marine policies, all of these claims should have been dismissed for improper venue. But certainly any claim which is derivative of the contract must be dismissed for improper venue, and that's what the district court found. But, of course, California law applies, and we do have now the invocation by a California plaintiff that if this is going to be subject to Japanese law, the California rights are being deprived. So what's your response? Well, Your Honor, federal law would apply to the enforcement of a forum selection clause in an international agreement. Bremen discusses those principles of comedy that would require us at the federal level to defer to the courts of another sovereign. But in any event, the California public policy argument that plaintiffs refer to is really not all that strong. As the Court alluded to, we have... In other words, you're conceding that it is an element in this, in the resolution of this issue? I suppose it is an element that ought to be considered, but it is not an element that would be dispositive. We have a New Jersey corporation, Mitsui, which is seeking to enforce a... seeking to recover for its own benefit monies from a Japanese corporation. The only reason that the Japanese corporation, Tokyo Marine, has any obligation whatsoever is a Japanese contract between it and a Japanese company. In those instances, and I should add that the KDA, the additional insured, has been fully reimbursed, has no loss. In that instance, there's really no substantial public policy for California to enforce here. And finally, if I may, I wanted to address the issue of waiver. Plaintiffs' unilateral decision to file an amended complaint following dismissal of its derivative claims for improper venue waived their right to appeal from the first amended complaint under the Forsyth rule, although... Counsel, wasn't the Forsyth case overruled in our en banc decision in Lacey v. Maricopa County? Your Honor, the Forsyth rule was limited in the Lacey decision, but this instance does not fit the exception recognized in Lacey because there was no instruction to the plaintiffs that they amend their complaint or withdraw their claims. Rather, I would say that this situation is more like the situation that was addressed in the unreported decision that a member of this panel participated on in LaBerry 509 Fed Appendix 595, but I wouldn't say that Lacey overruled the Forsyth rule in all circumstances. Anything further, Counsel? No, thank you. Thank you for the opportunity to appear here. The case just argued will be submitted.
judges: O'scannlain, Rawlinson, Callahan